IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**INETWORKS SERVICES, LLC, INETWORKS GROUP, INC., DAVID SAMAT, and THE SAN JOSE GROUP CO.,**<br><br>**Defendants.** | Case No. 18-cv-07693<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

This lawsuit arises from an insurance coverage dispute between Plaintiffs Hartford Fire Insurance Company ("Hartford Fire") and Hartford Casualty Insurance Company ("Hartford Casualty") (collectively, "Hartford") on the one side, and Defendants iNetworks Services, LLC, iNetworks Group Inc., (collectively, "iNetwork"), David Smat, and the San Jose Group Company ("San Jose") (collectively, "Defendants") on the other. Before the Court is Hartford's motion for summary judgment. For the reasons stated below, Hartford's unopposed motion for summary judgment is granted as to Count I and Counts IX-XIV. Hartford's motion for summary judgment is granted as to Counts III and V-VII. Counts II, IV, and VIII are dismissed as moot.

1

## PROCEDRUAL POSTURE

Hartford filed a Complaint in this Court seeking a declaratory judgment that it had no duty to defend or indemnify the iNetwork Defendants and David Smat. The Complaint listed fourteen counts. (Dkt. 1). The iNetwork Defendants and David Smat have not responded to the lawsuit despite being served. On February 15, 2019, the Court granted default judgment against the iNetwork Defendants and David Smat. (Dkt. 16). San Jose responded to the Complaint (Dkt. 7). Hartford moved for "default and summary judgment" on Counts I, III, V-VII, IX-XIV. (Dkt. 19). Only San Jose responded to the motion, stating that it does not oppose Hartford's motion for Counts I and IX-XIV. (Dkt. 24, 1-2; Dkt. 37 ¶ 4). After reviewing the relevant policy provisions, the Court grants Hartford's unopposed motion for summary judgment on Counts I and IX-XIV. The Court addresses the parties' arguments regarding Counts III and V-VII below. The remaining Counts II, IV, and VIII are dismissed as moot.

## BACKGROUND

**1. Underlying Litigation**

In August 2015, Hartford Casualty issued iNetworks Group a General Liability Policy ("General Policy") and an Umbrella Liability Policy ("Umbrella Policy") for the period of November 6, 2015 to November 6, 2016. (Dkt. 21 ¶¶ 26, 28). Several months later, Hartford Fire issued to iNetwork Services a Technology Liability Policy ("Technology Policy") for the period of January 27, 2016 to January 27, 2017.

iNetworks provides data storage to its clients. (Dkt. 21 ¶ 9). In September 2014, San Jose contracted with iNetworks to store all of San Jose's data on iNetworks' servers. (*Id*. at ¶¶ 16-17). On April 1, 2016, the iNetworks server containing San Jose's data was infected by a virus that destroyed all of San Jose's data (the "Server Compromise"). (*Id*. at ¶ 11). iNetworks and Smat were aware of the Server Compromise in April 2016. (*Id*. at ¶ 12). Between April 2016 and August 2016, San Jose and iNetworks exchanged emails about the Server Compromise, its causes, the impact it had on San Jose's business, and potential settlement offers. (*Id*. at ¶ 13; Dkt. 25 ¶ 4).

On January 31, 2018, San Jose filed a lawsuit against iNetworks in the Circuit Court of Cook County alleging one count of negligence. (Dkt. 25 ¶ 7). iNetworks did not inform Hartford Fire of the Server Compromise or the lawsuit until six months later, on July 15, 2018. (Dkt. 21 ¶ 31). At that time, iNetworks asked Hartford Fire for coverage under the Technology Policy.[1] (*Id*.). San Jose filed a Second Amended Complaint on December 6, 2018, adding iNetwork Services as a defendant. (Dkt. 25 ¶ 8). The Circuit Court of Cook County entered a default judgment against the iNetwork defendants for $10,518,379 on May 21, 2019. (*Id*. at ¶ 9). On June 14, 2019, Hartford filed a motion to intervene and vacate, which the Circuit Court of Cook County granted. (*Id*. at ¶¶ 10, 12). San Jose's lawsuit was dismissed on January 10, 2020 and is currently pending before an Illinois appellate court. (Dkt. 37 ¶¶ 1-2).

---

[1] iNetworks informed Hartford Casualty of the lawsuit and the Server Compromise on August 7, 2018. On that date, iNetworks demanded Hartford Casualty defend and indemnify iNetworks and Smat under the General Policy and the Umbrella Policy. (Dkt. 21 ¶¶ 33-34).

Hartford now seeks a declaratory judgment that it has no duty to defend or indemnify iNetworks.

## 2. Relevant Policy Provisions

Although Hartford issued three separate insurance policies to iNetwork, only the Technology Policy is relevant to this motion.[2] The Technology Policy includes a reporting requirement, which states in relevant part:

> This is a claims first made policy… Your policy applies only to claims when:
>
> the glitch occurs on or after the Retroactive Date and before the end of the policy period, and
>
> the claim is first made against any of you during the policy period and you use your best efforts to report such claim to us in writing as soon as practicable in accordance with the terms of this policy.

(Dkt. 1, Ex. 1, 16). This reporting requirement is described again in the "When We Insure" section, which states that coverage is provided for a claim if "the claim because of the glitch is first made against any of you during the policy period and reported to us in writing by you using your best efforts to notify us as soon as practicable after any specified insured becomes aware of it." (*Id*. at 18).

In addition to a reporting requirement, the Technology Policy also has a notice condition, which states: "The named insured must notify us in writing as soon as practicable of a glitch or circumstance that may result in a claim under this policy." (Dkt. 1, Ex. 1, 32). If the insured becomes aware of a glitch during the policy period, it must provide written notice to Harford "within the policy period of: a. the specific

---

[2] The Counts involving the other policies are unopposed.

4

glitch, the date of the glitch and the name of the potential claimant; b. the damages which have or may result from the glitch; c. the circumstances by which you first became aware of the glitch." (*Id*.). This condition also states that "[i]f a claim is made against any of you, as soon as any specified insured knows of such a claim, you must… immediately send us copies of all demands, notices, summonses and legal papers…" (*Id*. at 33).

Finally, the Technology Policy defines "Glitch" as:

Glitch means the following when actually or allegedly committed by you or on your behalf:
    1.    Negligent: act, error, or omission;
    2.    Breach of warranties or representations about the fitness, quality, suitability, performances or use of your technology services;
    3.    Failure of your technology services to perform the function or serve the purpose intended; and
    4.    Failure to prevent:
        a. Denial of service;
        b. Disruption of service;
        c. Unauthorized access to, unauthorized use of, repudiation of access to, tampering with or introduction of malicious code into: firmware, data, software, systems or networks;
        d. Identity theft or disclosure of nonpublic personal information; or
        e. Disclosure of third party nonpublic corporate information.

(Dkt. 1, Ex. 1, 17).

## **LEGAL STANDARD**

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment is a particularly appropriate mechanism for resolving cases involving the interpretation of written contracts. *International Union of United Auto., Aerosapce and Agric. Implement Workers of Am. v. Rockford Powertrain, Inc.*, 350 F.3d 698, 703 (7th Cir. 2003). "Because contracts are interpreted as a matter of law, claims that turn on the interpretation and construction of a contract, rather than on disputed material facts, are suitable for resolution on a motion for summary judgment." *W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 928 F. Supp. 2d. 976, 981 (N.D. Ill. 2013), aff'd on other grounds, 794 F.3d 666 (7th Cir. 2015) (citing *Kmart Corp. v. Footstar, Inc.*, No. 09 CV 3607, 2012 WL 1080262, at *12 (N.D. Ill. Mar. 30, 2012)).

## **DISCUSSION**

The parties agree Illinois law governs their dispute. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In Illinois, the construction of an insurance policy is a question of law. *County Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 311, 856 N.E.2d 338, 342 (Ill. 2006). An insurance policy is to be construed as a whole, "giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge*

*Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 362, 860 N.E.2d 307, 314 (Ill. 2006). "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (Ill. 2004). "Although insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous.". *Livorsi Marine*, 222 Ill. 2d at 311.

As a preliminary matter, both parties agree that the Server Compromise constitutes a "glitch" under the Technology Policy. (Dkt. 19, 2-3; Dkt. 24, 3). For the sake of this motion, both parties agree that the emails between April 2016 and August 2016 constituted a "claim" by San Jose against iNetwork.[3] (Dkt. 19, 4; Dkt. 24, 3). The Parties accordingly agree that both the glitch and the claim occurred during the policy period of the Technology Policy. Finally, the Parties agree that Hartford Fire did not receive notice of the lawsuit or the glitch until July 15, 2018. (Dkt. 19, 5; Dkt. 24, 4).

The Parties diverge on whether the Technology Policy is a claims-made policy, and whether iNetworks' delay in reporting the lawsuit and glitch precludes coverage. San Jose asserts that the Technology Policy is "not a pure claims-made policy, but is a hybrid of both an occurrence policy and a claim-made policy." (Dkt. 24, 10 n. 4). San Jose then argues that iNetworks reported the lawsuit and glitch within a reasonable

---

[3] In a footnote, Hartford states: "The Technology Policy only provides coverage for claims first made during the policy period. Hartford specifically reserves the right to deny coverage on the ground that no claim was made during the policy period (Docket No. 1, Count II). Nevertheless, solely for the purposes of this Motion, Hartford Fire will presume a claim was made during the policy period at about the time of the alleged Server Compromise." (Dkt. 19, 4). The Court thus proceeds on the assumption that the emails constituted a claim made during the reporting period.

7

time, and therefore should be accorded coverage. Hartford counters that the Technology Policy is a claims-made policy. It also argues that (1) iNetworks failed to report any claim made during the policy period within a reasonable time, and (2) iNetworks breached the Technology Policy's notice conditions by failing to provide notice of the Server Compromise and the resultant claim.

First, San Jose argues that the Technology Policy is "a hybrid of both an occurrence policy and a claim made policy." (Dkt. 24, 10 n. 4). San Jose does not cite to the text of the Technology Policy for this assertion. Rather, San Jose argues this is the case because the Policy requires that the occurrence and the claim both occur during the policy, and that the Technology Policy does not require that notice of the claim be given during the policy period. San Jose fails to cite any caselaw in support of its assertion.

The Court is unpersuaded. The Technology Policy is clearly a claims-made policy, which provides the insureds with coverage for claims by third parties that are both made and reported during the applicable time period.[4] The plain text of the Policy expressly identifies itself as a claims made policy at least twice: "this is a claims first made and reported in writing policy" (Dkt. 1, Ex. 1, 13) and "this is a claims first

---

[4] "By way of background, conventional liability insurance policies or 'occurrence' policies 'insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured'…Because an occurrence policy can expose an insurance company to indefinite future liability, companies often also offer a less expensive option known as a 'claims-made' policy, which generally limits liability to claims made and reported during the policy period." *Pacific Ins. C. v. Eckland Consultants, Inc.*, No. 00 C 2140, 2001 WL 1388297, at *3 (N.D. Ill. Nov. 5, 2001) (internal citations omitted). Coverage under a claims-made policy is triggered when: (1) a claim is made during the policy period, and (2) the claim is reported during the policy period (or, as is the case here, during some set period after the expiration of coverage). *Id.* (citing *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340 (1999)).

made policy." (*Id.* at 16). In addition to identifying itself as such, the Technology Policy has the features of a claims-made policy: it requires that a claim be made during the policy period and that the claim be reported "as soon as practicable." Importantly, "[a] 'claims made' policy can contain the 'as soon as practicable' language and remain 'claims made,' since the 'claims made' character of a policy only turns on the existence of the requirement that the claim be reported during the term of the policy." *Nat'l Union Fire Ins. Co v. Bauman*, No. 90 C 0340, 1992 WL 1738, at *4 (N.D. Ill. Jan. 2, 1992) (citing *Nat'l Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168-69 (1st 1991)); *see also Executive Risk Indem., Inc. v. Chartered Benefit Servs., Inc.*, 03 C 3224, 2005 WL 1838433, at *10 (N.D. Ill. July 29, 2005). Such is the case here.

Courts strictly construe notice requirements in claims-made policies and view notice requirements as valid conditions precedent. *See Montgomery Ward & Co. Inc. v. The Home Ins. Co.*, 324 Ill. App. 3d 441 (2001) ("[a] notice provision [in an insurance contract] is a valid condition precedent and not a mere technical requirement that the insured is free to overlook or ignore with impunity"). Thus, "[b]reaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy." *Livorsi Marine Inc.*, 222 Ill. 2d at 303. As mentioned above, in order to provide coverage, the text of the Technology Policy requires that a claim be made during the policy period and that iNetwork report that claim "as soon as practicable." (Dkt. 1, Ex. 1, 16). Illinois courts have interpreted the phrase "as soon as practicable" to mean "within a reasonable time." *W. Am. Ins. Co. v. Yorkville Nat'l Bank*, 238 Ill. 2d 177, 201 (2010). Where, as here, the material facts

9

are not in dispute, the reasonableness of notice to an insurer by an insured is a question of law. *Kerr v. Ill. Cent. R.R.*, 283 Ill.App.3d 574, 670 N.E.2d 759, 766 (Ill. App. 1996). "The Illinois Supreme Court has looked to several factors in assessing whether an insured's notice is reasonable, including: (1) the language of the policy's notice provision; (2) the insured's sophistication in the insurance matters; (3) the insured's awareness of an event which may trigger insurance coverage; (4) the insured's diligence in ascertaining whether the policy coverage is available; and (5) prejudice to the insurer."[5] *Essex Ins. Co. v. Vill. of Oak Lawn*, 189 F.Supp.3d 779, 790 (N.D. Ill. 2016) (citing cases); *see also Great American E&S Ins. Co. v. Power Cell LLC*, 356 F. Supp. 3d 730 (N.D. Ill. 2018). Illinois courts have made clear that these factors "*may* be considered and, though relevant, are not individually determinative." *Id.* (citing *Hartford Cas. Ins. Co. v. ContextMedia, Inc.*, 65 F.Supp.3d 570, 579 (N.D. Ill. 2014)).

The first factor—the policy language—"does not aid in our reasonableness analysis because it does not identify a specific timeframe for giving notice." *Yorkville*, 238 Ill. 2d 177 at 186. Rather, the text of the policy requires that the insured notify the insurer "as soon as practicable." (Dkt. 1, Ex. 1, 16). This terminology does not favor either party; whether iNetworks gave notice "as soon as practicable" is informed by the Court's assessment of the remaining factors.

---

[5] Hartford claims the *Livorsi* factors are only applied to occurrence policies and not to claims-made policies. (Dkt. 30, 11-12). However, all cases cited by Hartford in support of that assertion were decided before *Livorsi*.

It is unclear whether the second factor—sophistication of the insured—favors either party. San Jose argues that iNetworks was unsophisticated because it had only filed one lawsuit in its history and was formed in 2012. Hartford counters that iNetworks was sophisticated in commerce and insurance matters because it had purchased multiple insurance policies through sophisticated insurance brokers. Neither party has presented compelling arguments in its favor. This factor is a neutral one.

Third is the insured's awareness of an event that may trigger insurance coverage. This factor clearly favors Hartford. iNetworks was aware of the Server Compromise in April 2016. (Dkt. 21 ¶ 13; Dkt. 25 ¶ 4). It was also aware that the Server Compromise detrimentally impacted San Jose's business operations, as San Jose and iNetworks exchanged emails on the subject for three months. (*Id.*). And for the sake of this motion, the Court presumes that a claim was made by at least August 2016.[6] iNetworks was clearly aware of an event that may have triggered insurance coverage.

---

[6] In addressing this factor, San Jose briefly argues that iNetworks did not believe the Server Compromise or the emails constituted a claim because iNetworks thought it could recover all of San Jose's data, the parties were collaborating, and as of August 2016, iNetworks thought it had recovered all of San Jose's data. (Dkt. 24, 12). San Jose also argues that the record is underdeveloped, and that the parties do not know when iNetworks knew that San Jose's data had been irretrievably destroyed. Thus, iNetworks did not realize that it needed to alert Hartford of the claim in August 2016. First, the Court believes the record is sufficiently developed. It also believes that any failure to develop the record lies at the foot of the parties. Following Hartford's filing of the motion, San Jose asked the Court to take discovery, which the Court granted over Hartford's objection. (Dkt. 22). San Jose had adequate time to develop a robust record. Second, the Court disagrees with San Jose's characterization of the emails. The emails clearly show two parties in hostile negotiations, including accusations of wrongdoing and discussions of settlement offers. Third, even if San Jose is correct, and the August 2016 emails do not constitute a claim, this fact would not change the Court's result. To trigger coverage, the claim would have to have been made during the policy period, which ended in January of 2017—five months after the date of the emails. There are two potential scenarios. Either a claim was made after the August 2016 emails but before the expiration of the policy period, in which case

The fourth factor is the insured's diligence in ascertaining whether coverage is available. This factor takes into account the insured's justification for any delay; under some circumstances, lengthy delays may be reasonable. *Yorkville*, 238 Ill.2d at 187 (collecting cases). The delay in this case exceeded two years after the Server Compromise and claim, eighteen months after the expiration of the Technology Policy, and six months after the filing of the lawsuit. The record is silent as to iNetworks' diligence in determining whether coverage existed, and the record presents no justification for iNetworks' delay.

Finally, the fifth factor considers whether the insurer suffered prejudice as a result of the delay. San Jose argues that Hartford was not prejudiced, as it was able to intervene in the underlying lawsuit and vacate the $10 million default judgment against iNetworks. Hartford argues that it was prejudiced as it was unable to investigate the Server Compromise in real time, it was unable to provide iNetworks with experts that could have mitigated the data loss, a current investigation would be difficult given that "iNetworks Services no longer even exists as a functioning entity," and the relevant individuals may not be able to recall as much information as they could have several years ago. (Dkt. 30 at 14). Hartford also notes that it is unclear whether the hardware or software used have been preserved for testing. (*Id.*) Hartford may well have been prejudiced by the delay. Moreover, the absence of prejudice is not a dispositive factor. *Livorsi*, 222 Ill.2d at 316-17 ("even if there is no

---

the reporting delay of a year and a half year would result in no coverage, or the claim was made after expiration of the policy period in which case there would still be no coverage. San Jose's argument does little to save its position.

prejudice to the insurer, a policyholder still must give reasonable notice according to the terms of the insurance policy").

Although "length of delay" is not a delineated *Livorsi* factor, it bears note that iNetworks reported the claim on July 15, 2018—over two years after the Server Compromise and claim, and eighteen months after the expiration of the Technology Policy, and six months after San Jose filed the underlying lawsuit. (Dkt. 19 at 5). Under these circumstances, and considering the above factors, such a delay is not "within a reasonable time." *Yorkville*, 238 Ill. 2d at 201; *James River Ins. Co. v. TimCal, Inc.*, 2017 IL App (1st) 162116, 81 N.E.2d 185 (1st Dist. 2017) (reporting a claim nine-months after it occurred and after expiration of the policy period was unreasonable, and insurer need not provide coverage); *IMC Global v. Continental Ins. Co.*, 378 Ill.App.3d 797, 808, 883 N.E.2d 68, 80 (2007) (thirteen-month delay was unreasonable and thus precluded coverage); *Equity General Ins. Co. v. Patis*, 119 Ill. App.3d 232, 237-38, 456 N.E.2d 348, 352 (1983) (insured's delay of four and a half months in reporting a claim was unreasonable and therefore not "as soon as practicable"). Because iNetworks failed to report the claim "as soon as practicable," Harford has no duty to defend or indemnify iNetworks for the claim. Hartford's motion is granted as to Count III.

Hartford also argues that, in addition to failing to timely report the claim, iNetworks breached the notice condition. The notice condition states, "the named insured must notify [Hartford] in writing as soon as practicable of a glitch or circumstance that *may* result in a claim under this policy." (Dkt. 1, Ex. 1 at 32)

13

(emphasis added). If the insured becomes aware of a glitch during the policy period, it must provide written notice to Hartford "*within the policy period* of: a. the specific glitch, the date of the glitch and the name of the potential claimant; b. the damages which have or may result from the glitch; c. the circumstances by which you first became aware of the glitch." (*Id.*) (emphasis added). The notice condition also states that "[i]f a claim is made against any of you, as soon as any specified insured knows of such a claim, you must… immediately send us copies of all demands, notices, summonses and legal papers…" (*Id.* at 33). Like the reporting requirement, "as soon as practicable" in this context has been interpreted to mean "within a reasonable period of time." *Yorkville*, 238 Ill. 2d at 201.

Hartford faults iNetworks for: (1) failing to provide notice during the policy period of the glitch, including the date of the glitch, name of potential claimant, and potential damages; (2) failing to provide notice of the circumstance that may give rise to claim; and (3) failing to provide timely notice of the resulting claim. As noted above, the Server Compromise constitutes both a glitch and a circumstance. iNetworks was aware of the Serve Compromise as of April 2016, which was within the policy period. (Dkt. 21 ¶ 12). It is also undisputed that iNetworks did not notify Hartford of the Server Compromise until July 15, 2018. (*Id.* at ¶ 31). Accordingly, Hartford must prevail on its first and second argument. iNetworks was required to notify Hartford of the Server Compromise, the date of the Server Compromise, the potential claimants affected, and the potential damages. Importantly, iNetworks was required to notify Hartford before the expiration of the policy period, and even before a claim

14

actually materialized. It failed to do so. Hartford is entitled to summary judgment on Counts V and VI.

Hartford's final argument—that iNetworks failed to timely notify Hartford of the claim—largely overlaps with Hartford's arguments regarding iNetwork's failure to timely report the claim. The Court has already addressed those arguments and determined that iNetworks' lengthy delay in notifying Hartford of the claim was unreasonable. Hartford is entitled to summary judgment on Count VII.

## **CONCLUSION**

For the reasons stated above, the Court grants Hartford's motion for summary judgment on Counts I, III, V-VII, and IX-XIV. Counts II, IV, and VIII are dismissed as moot.

E N T E R:

Dated: March 27, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge